26 C.C.P.A.(Patents)

### MALM et al. v. SCHNEIDER.

Patent Appeal No. 4001.

Court of Customs and Patent Appeals.
Jan. 23, 1939.

Newton M. Perrins and Daniel I. Mayne, both of Rochester, N. J., for appellants.

I. Seltzer and C. W. Levinson, both of New York City, for appellee.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

GARRETT, Presiding Judge.

This is an appeal from the decision of the Board of Appeals, of the United States Patent Office in an interference proceeding affirming the decision of the Examiner of Interferences awarding priority to the party Schneider upon the two counts involved, reading:

"1. In a process for the production of low viscosity cellulose acetate, the acetylation step which comprises permitting the temperature of the reaction to rise above normal acetylation temperature for a short period during the esterification and then completing the esterification at normal acetylation temperature.

"2. In a process for the production of low viscosity cellulose acetate, the acetylation step which comprises initially acetylating the cellulose for a short period at a temperature higher than normal acetylation temperatures and then completing the acetylation at normal acetylation temperature."

A brief history of the case is as follows:

On May 9, 1933, patent No. 1,908,524 was issued to Malm et al., assignors to Eastman Kodak Company, upon an application which they had filed December 16, 1929. On June 29, 1933, Schneider copied nine claims of the patent into an application, serial No. 590,634, which he had filed February 3, 1932, as a continuation of another application which he had filed as serial No. 231,397, on November 5, 1927, and requested an interference. The Primary Examiner passing upon the matter ex parte held that Schneider's disclosure failed to support the claims and rejected them, denying the interference sought. Schneider appealed ex parte to the Board of Appeals. The board affirmed as to four of the claims but reversed as to the other five, and an interference was declared with the five thus allowed claims constituting the counts. Malm et al. moved to dissolve chiefly on the ground that Schneider's application did not support the counts and the Primary Examiner, adhering to his former view expressed in the ex parte proceeding, sustained the motion. Upon appeal to the board, that tribunal affirmed the examiner's decision as to counts 3, 4 and 5, but reversed as to counts 1 and 2. Schneider took no appeal and so the interference proceeded with only counts 1 and 2 involved. The Examiner of Interferences, citing Patent Office rule 130, held that the question of Schneider's right to make the counts was not before him for determination and, after discussing other questions to which allusion will be made later, awarded priority to Schneider. Upon appeal, the board again discussed the right of Schneider to make counts 1 and 2, and, adhering to the views formerly expressed in the ex parte decision, affirmed the decision of the Examiner of Interferences.

From such decision the instant appeal was taken.

No preliminary statements seem to have been filed, at least none appears of record, and both sides are confined to their filing dates. It is not questioned that Schneider is entitled to the filing date of his first application, November 5, 1927, for such disclosure as is there made, nor is it claimed that Malm et al. secure any advantage by reason of being patentees; so, the burden rested upon them as the junior parties to establish priority by a preponderance of the evidence.

Neither party took testimony, and as the case is presented before us the issue most strongly emphasized relates to the disclosure, or alleged lack of disclosure, in the original application of Schneider, or, as stated in the brief on behalf of appellants, "whether the disclosure contained in Schneider's application 231,397 clearly shows a conception and constructive reduction to practice by Schneider of the process defined by Counts 1 and 2."

It may be said, however, that a question of estoppel was raised and urged by appellants before the tribunals below and that one of the assignments of error before us relates to this issue, it being stated in the following terms: "6. [The board erred] In not holding that Schneider is estopped from claiming the invention defined by Counts 1 and 2, in view of Schneider's failure to assert claim thereto until after Malm and Andersen's corresponding Australian patent No. 27,465 of 1930 had become a publication and until after a copy of the claims of Malm and Andersen's corresponding Canadian application had been submitted to Schneider."

In explanation of the foregoing, it may be said that Malm et al. caused to be introduced into the record certain matter relating to an interference proceeding in Canada, and also a copy of an Australian patent issued to them, or their assignee, corresponding to their United States patent, together with a certificate

of the United States Commissioner of Patents that such Australian patent, or a copy thereof, was received in the United States Patent Office March 19, 1931, and had been "available for public use since that date."

The issues which appellants raised, based upon these papers, were discussed by all three of the tribunals, that is by the Primary Examiner, the Examiner of Interferences, and the Board of Appeals, and all concurred in the holding that appellants' contentions regarding them were not well taken.

In the brief on behalf of appellants before us there is no reference to the interference proceedings in Canada and it is assumed that all contentions based upon such proceedings have been abandoned. However that may be, the issue in that regard appears to have been on all fours with one involved in the case of Ronning Machinery Co. v. Winsor, 76 F.2d 392, 22 C.C.P.A., Patents, 1107, where we held, as expressed in the syllabus of that opinion, that "The Patent Office tribunals were fully justified in concluding that a concession of priority in connection with an interference pending in the Canadian Patent Office could form no possible basis for the application of the doctrine of estoppel in a United States interference proceeding."

The argument on behalf of appellants with respect to the Australian patent advances the theory that Schneider was "guilty of fatal laches" in copying the claims, they not having been copied until June 29, 1933, while appellants' Australian patent became open to the domestic public in the United States Patent Office March 19, 1931. The principal authority cited as persuasive by appellants is the case of Hartford-Empire Co. v. Conway P. Coe, 64 App.D.C. 176, 76 F.2d 426, 24 U.S. Pat.Q. 393, which, in turn, cited the infringement case of Webster Electric Co. v. Splitdorf Electrical Co., 264 U.S. 463, 465, 44 S.Ct. 342, 68 L.Ed. 792.

The cases so cited are not regarded as having any particular pertinency in this proceeding. The question sought to be raised in this connection seems to be one of patentability to Schneider and does not affect the issue of priority nor any question ancillary thereto. Bloom v. Locke & Dosch, 69 F.2d 113, 21 C.C.P.A., Patents, 888, and cases therein cited.

Upon the question of Schneider's right to make the counts based upon the disclosure contained in his application of November 5, 1927, serial No. 231,397, it may be remarked in the first place that, relatively speaking, the counts are quite broad, and it is the well-known rule that in an interference proceeding counts are to be given the broadest interpretation which their language reasonably will permit. As a corollary to the rule, however, we have the other well-known principle that express limitations appearing in counts may not be disregarded, and appellants here urge that the counts involved contain limitations which are not met by Schneider's disclosure.

Appellants' specification states: "The complete process which we have developed comprises the pretreatment of cellulose with acetic acid and a catalyst to prepare the cellulose for better acetylation, followed by an acetylation process which is conducted at a relatively high temperature during the first part of the acetylation, after which the acetylation is continued for a time at what might be termed a normal acetylation temperature; the cellulose acetate so produced may then be hydrolyzed in known manner."

In the decision of the board here appealed from, it is said: "The subject matter as pointed out by appellants and defined in the counts relates to a process for preparing low viscosity cellulose acetate and includes the acetylation step which comprises permitting the temperature of the reaction to rise above normal acetylation temperature for a short period and then completing the esterification at normal acetylation temperature."

Limitations of the counts particularly emphasized in the brief on behalf of appellants are stated as follows, the italicized phrases indicating the emphasized limitations:

"(1) Acetylating at a temperature above normal acetylation temperature (100-110°F.) *for a short period.*

"(2) Reducing the reaction temperature to normal acetylation temperature, at the end of the *short period.*

"(3) Then completing the acetylation *at the normal* acetylation temperature."

Elsewhere emphasis is placed upon the word "then" appearing in both counts and the brief asserts: "Schneider discloses no lowering of the temperature in his acetyla-

tion step; on the contrary he employs *gentle warming* to maintain the temperature reached in the first part of his acetylation. The Counts call for acetylating *for a short period* above normal acetylation temperature and *then* acetylating at normal acetylation temperature. Therefore, a definite *lowering* of the temperature during acetylation is necessary to support the Counts."

It may be noted that while the above quotation from the brief specifies the "above normal" temperature as 100-110°F., the counts themselves do not specify any degrees. It should also be said that appellants in defining the degrees of temperature use the Fahrenheit scale while Schneider uses the centigrade symbol. So in making comparisons it is necessary to convert the respective terms. This the Primary Examiner did in his decision of March 11, 1935, dissolving the interference, in the following language: "The invention is directed to a process for producing low viscosity cellulose acetate, wherein cellulose is initially partially acetylating at temperatures appreciably above 100°F. to 110°F. (37.78°C. to 43.33°C.) and up to 150°F. (65.56°C.) which are above the normal acetylating temperatures employed which are 100°F. to 110°F., for about one and one-half to two hours and then completing the acetylation at 100°F. The last sentence of page 4 of the patented file of Malm et al. defines 'normal acetylating temperatures' as ranging from 100°F. to 110°F. (37.78°C. to 43.33°C.) * * *."

■ It is urged in the argument on behalf of appellants that the counts should be construed in the light of appellants' patent wherein they originated and various phrases of the specification are referred to by way of explanation of the limitations relied upon. It is the rule that where ambiguity is present in counts of a patent they are generally construed in the light of the teachings of the patent, but this rule is followed only in cases of ambiguity.

■ It is argued that the term "short period" is a relative term, and appellants point out that in an example given in their specification an initial acetylation time of "about one and one-half to two hours" is named and that it is said in the specification, with respect to the completion of the acetylation after reducing the temperature, "This usually requires from two to three more hours." Seemingly, appellants would have us now interpret the counts by this example of time, but it is noted that appellants' specification, before giving the example, expressly states "* * we do not wish to be limited by example * * *."

Argument is also advanced as to the limitation embraced in the phrase "at the normal," referring to the temperature at which acetylation is completed.

The arguments as to all these limitations seem to us to be sufficiently answered in the brief on behalf of Schneider from which we quote the following:

"* * * It is quite true that there is not a specific disclosure of the time during which Schneider's acetylation temperature is maintained at 50-55°C., but it is also true that the counts do not call for any specific time. It is, however, quite clear that it is a comparatively short time. When an experimenter gives a direction to acetylate and allow[s] the temperature to rise to 50-55°C. and then to maintain it at 40 or 41 or 42°C. for about 2 hours or longer, the time during which it was maintained at 50-55°C. must be short. Further, it is obvious from a perusal of Schneider's disclosure that his object is precisely the same as Malm et al.'s object in their disclosure. The completion of Malm et al.'s acetylation at normal acetylation temperature, i. e. the second part of his process, takes 2-3 hours * * *. The completion of Schneider's process at 40 or 41°C. etc. takes 2 hours * * *. The peak temperature in Malm et al. may be as high as 150°F. (their patent chart shows 125°F.). The peak temperature of Schneider is 50-55°C., i. e. 122-131°F. Hence it is obvious that with the same peak temperature, the same temperature for completion of the reaction, and the same time for completion of the reaction, and the same ultimate object, the time during which Schneider maintains his peak temperature of 50-55°C. must be of the same order as Malm's. * * *

In the same paragraph at the head of page 22 of their brief, Malm et al. question that Schneider's high temperature treatment (and note the admission that it is a high temperature treatment) is for an initial period or a later period. It is perfectly obvious that it must be an initial period. Just as in the Malm et al. application, so in the Schneider application the peak temperature is produced by the heat of the acetylation itself so that it occurs quite as

early in Schneider as it does in Malm et al.

Furthermore, even assuming, without admitting Malm et al.'s warped interpretation of the portions of the Schneider application quoted on pages 18 and 19 of their brief, it is submitted that the Schneider application still affords basis for the express limitations in the counts. Thus in application S. No. 231,397 Schneider, in his specific example after setting out the conditions and duration of the reaction proceeds as follows * * * :

The mass is then lowered to the hydrolizing temperature of below 20 to 30°C. (68 to 86°F.) *and a small quantity of water, (say 10 to 40 parts) or water and acetic acid and/or hydrogen peroxide is added for ripening in the usual manner.*

Careful consideration has been given to the very elaborate arguments advanced on behalf of appellants, but it seems quite clear to us that the counts contain no limitations which are not fairly supported by Schneider's disclosure.

Other matters suggested in the brief and oral argument for appellants are unimportant in view of our conclusion upon the matter of Schneider's disclosure.

The decision of the board is affirmed.

Affirmed.