33 C.C.P.A.(Patents)

### KLIESRATH et al. v. KESLING.
#### Patent Appeal No. 5065.

Court of Customs and Patent Appeals.
March 4, 1946.

Rehearing Denied May 3, 1946.

Edwin S. Booth, of Chicago, Ill., for appellants.

Lawrence C. Kingsland and Edmund C. Rogers, both of St. Louis, Mo., for appellee.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, JACKSON, and O'CONNELL, Associate Judges.

BLAND, Associate Judge.

This is an appeal by the junior parties, Kliesrath and Sanford, hereinafter referred to as Kliesrath et al. or appellants, from the decision of the Board of Interference Examiners of the United States

Patent Office awarding priority of invention to the senior party, Kesling, of counts 1 and 2 in an interference proceeding which involved Kliesrath et al. patent No. 2,212,442, issued August 20, 1940, on an application, Serial No. 51,138, filed November 22, 1935, and Kesling's reissue application, Serial No. 246,454, filed December 17, 1938, for the reissue of patent No. 2,069,526, which was granted February 2, 1937, upon an application filed July 20, 1935.

The counts involved are claims taken from the Kliesrath et al. patent No. 2,212,442.

Count 1 is illustrative and reads:

"1. The combination with a selective transmission mechanism having a plurality of spaced shifter bars movable longitudinally to establish different gear relations, of a shifter member movable into engagement with one or another of said bars, means operatively connected with said shifter means for so moving the same, means including a double-acting fluid pressure motor operatively connected with said shifter member for moving the same together with the shifter bar selected thereby in opposite directions, means including valve mechanism for controlling and directing the flow of fluid power to said motor, means for controlling the operation of the first named means, and means for actuating the two last named means in order to control the energization of said motor and to actuate the first named means including *a control lever movable laterally for actuating said first mentioned means and movable longitudinally for controlling said valve mechanism.*" [Italics ours.]

Both parties took testimony. The evidence of Kliesrath et al. was submitted for the purpose of establishing conception of the invention in 1931, reduction to practice in the summer of 1932, and continuing development work leading to "commercial exploitation of the invention" in 1934.

Kesling's testimony was directed towards establishing completion of his invention as of the filing date of his parent application, Serial No. 683,977, filed on August 7, 1933, upon which application patent No. 2,034,400 was issued. This is the only date relied upon by Kesling and that he is entitled to this date is not here in controversy.

As will later herein appear, the invention involved and the issues pertaining thereto are of such character as not to require a detailed description of the devices of the parties. It is sufficient to state that the invention relates to a mechanism for providing power to assist in the shifting of the gears of an automobile transmission. The device, generally speaking, and particularly with reference to the functions performed by it, is well understood in the art as being one which is designed to eliminate floor board and front seat space waste by placing the instrument which initiates the shifting of the gears to the dashboard rather than elsewhere. After the initial operation of the dashboard shifting mechanism has taken place the automatic auxiliary power device operates to shift the gears.

It is the contention of Kliesrath et al. that the record discloses that they have proven satisfactorily that they had successfully reduced to practice the invention defined by the counts as early as 1932 by the installation on a Dodge car owned by Harold W. Price of a device which completely responds to the counts involved. The date of this alleged reduction to practice being prior to any date to which Kesling is entitled, Kliesrath et al. argue that no further consideration need be given to other record facts.

It is also contended by Kliesrath et al. that if the view of the board as to their said earlier reduction to practice is accepted subsequent installations of a somewhat different device on other cars amounted to a reduction to practice in the event the counts are construed in accordance with appellants' interpretation of their meaning.

A further contention is made by Kliesrath et al. that since it is admitted that the device installed on the Dodge car in 1932 fully responds to the terms of the involved counts appellants must be given a conception date prior to 1932 and that the subsequent installations and other acts must be held to be proper evidence of diligence during the critical period so as to give the first conceiver the award of priority even though the last to reduce to practice.

The facts are not in serious dispute although there is considerable argument between the parties as to the effect to be given certain facts proven and spirited contentions with reference to the law applicable to such facts.

On the first question presented as to whether or not the earlier installation of the Kliesrath et al. device on the Dodge car amounted in law to reduction to prac-

tice, the board summed up the facts and held, for reasons stated, that appellants had not proven a reduction to practice by the 1932 installation. It said:

"Kliesrath and Sanford rely for priority on installations of gear shifting devices in several different cars. The first of these installations which allegedly constitutes a reduction to practice of the invention in issue was made in July 1932 on the Dodge car owned by Harold Price. It is not denied by the party Kesling that the Dodge installation was made in July 1932, nor that the device so installed responded to the requirements of the counts in issue. It is, however, strenuously urged (1) that the record does not show that the device so installed was the result of a joint conception of Kliesrath and Sanford and (2) that the device was not satisfactory and thus fails to establish a reduction to practice of the subject matter in issue.

"The first contention seems to be based on the idea that the Dodge installation was the invention of Harold Price and was not the invention of Kliesrath and Sanford. This raises the question of third party inventorship. It was held in Te Pas et al. v. Geldhof, 112 F.2d 800, 27 C.C.P.A. 1265, 521 O.G. 523, 1940 C.D. 603, that it is well-settled law that in an interference proceeding, a party cannot successfully contend that the invention is not that of his adversary, but that of a third party.

"Several witnesses testified concerning the Dodge installation; from their testimony it is clear that the gear shifting arrangement did shift the gears but that this was accomplished with a considerable clashing of gears. It also appears that the mechanism remained on the car for approximately two weeks during which period it was on and off the car about 25 or 30 times for adjustment. After this it was taken off the car and tested on the test bench. The nature of the bench tests is not given in any great detail and the results obtained therefrom are not stated.

"The clashing of the gears is admittedly an unsatisfactory operating condition which would likely result in damage to the mechanism; but it was stated that the Dodge normally shifted hard as it was not provided with synchronizing means in the transmission.

"We are of the opinion that the Dodge tests are inconclusive in establishing satisfactory operation of the device in issue. Certainly there was no demonstration that the device was a practical operative device for accomplishing the function for which it was designed. Had it been satisfactory or capable of being made satisfactory by adjustment, it seems that after 25 or 30 adjustments it should have been in such condition that it would shift in a more satisfactory manner than it did. Furthermore, the fact that it was only used for several weeks tends to show that it was not satisfactory.

"It is asserted that the noise was due to the fact that the transmission on the Dodge had no synchronizers and that the noise was not caused by defective operation of the shifting mechanism. The best proof of this assertion would have been a trial on a car that had such a transmission. We do not believe that the Dodge tests constituted a reduction to practice."

The facts relating to the Dodge installation are for our purposes sufficiently stated in the above-quoted decision. We agree with the conclusion reached by the board on this phase of the case that it was not demonstrated that the device installed on the Dodge car was a practicable operative device for accomplishing the function for which it was designed. The record clearly shows that there was such noise and clashing of gears as to lend belief to the fact that great damage would result to the gears if such shifting device was employed. The fact that it was put on and taken off the car and adjusted 25 or 30 times without any curing of this defect and that it was given a bench test, the results of which were not stated, not only does not support the theory that the test showed a satisfactory performance but, in our judgment, negatives that conclusion.

Agreeable to the conclusion of the board we think it is not a sufficient explanation to say in this proceeding that the said unsatisfactory results flowed from the fact that the Dodge car had no synchronizers connected with its shifting mechanism. There was no demonstration at any time during said tests that the device would work upon a car with proper synchronizers. If the parties, at the time they were adjusting and testing the device, had been of the opinion that the defect flowed from the lack of synchronizers and that the device was otherwise regarded as satisfactory, it seems reasonable to conclude that they would have tested it on a car which they thought was properly equipped for better performance.

We are clearly of the view that the board did not err in its holding that appellants' tests with respect to the Dodge installation failed to meet the requirements of the law as to reduction to practice, and while on this phase of the case it is proper to remark that activities subsequent to the Dodge test, hereinafter referred to, tend to support this conclusion.

After the Dodge test, certain tests were made on four different kinds of cars, a Studebaker, a Plymouth, a Buick and a Hudson, but these tests were made with devices which admittedly differed from the one tested on the Dodge car. The device used in testing on the Studebaker, Plymouth and Buick cars differed from the device associated with the Hudson car but concededly not in respects material here. On the latter the device employed was described as "Electric Hand," and commercial production of the "Electric Hand" in connection with the Hudson car was shown by the record. The board held that the devices used on these other cars did not respond to the counts when construed in the light of the interpretation given by this court to claims similar to the counts involved here with respect to the term "longitudinal movements" in In re Kesling, 124 F.2d 193, 29 C.C.P.A., Patents, 786.

It is conceded by everyone connected with the case that if the limitation in the counts as to longitudinal movements is given the interpretation this court gave it in the Kesling case, the installations on the four cars made subsequent to the Dodge test did not amount to reduction to practice, since the counts would not read on the device or devices employed in those installations and tests. On this phase of the case it is the contention of the appellants that the court's holding as to the proper interpretation of the limitation relating to longitudinal movements of the shifting device is not the proper interpretation to give to the involved counts since they were copied from the Kliesrath et al. patent, it being urged that the well-settled law is that in patent interference practice, where the question of interpretation of the counts is involved, the courts will give them as broad a construction as their language will reasonably permit, citing Hagen v. Cords, 88 F.2d 998, 24 C.C.P.A., Patents, 1128 and that where there is ambiguity the meaning as shown by the specifications of the patent from which the counts were taken must be applied.

It is urged by Kliesrath et al. that if the interpretation which was held improper in the Kesling case is applied to the counts in the instant case as far as appellants' patent specifications are concerned then the installations in the four last-named cars would amount to reduction to practice. This fact is not disputed by the appellee or by the tribunals below.

On this phase of the case the board said:

"It is urged by Kliesrath and Sanford that the counts in issue must be broadly interpreted as to them, so that the language 'movable longitudinally' of count 1 or 'longitudinal movements' of count 2 will mean movement longitudinal of the axis of the car; and yet be narrowly construed as to Kesling as was done by the Court. [Italics added.]

"It is difficult to see how we could construe the language of the counts broadly as to one party and narrowly as to the other. As the structures of the two parties are substantially identical in the respect pointed out above, and as the construction put upon 'longitudinal movements' by the Court is equally applicable to the structure of both parties, we believe that the meaning which we give to the language of the counts should and must be in harmony with that given by the Court, even though the counts in issue did not originate in the Kesling case. Thus, one of the distinguishing elements of the counts in issue is that the operating means is a mechanical device that is rocked about its axis to effect a cross shift or shift bar selection, and moved longitudinally of its axis to effect the gear shift.

"This being so, only the Dodge device is pertinent here. The Studebaker device utilized a hand-operating member which is pivoted in a manner similar to that shown by the Moorhouse patent and is thus not pertinent. The Plymouth and Buick installations are not pertinent as in each, the cross shift results from a longitudinal movement of the selector, and the gear shift from a lateral or rocking movement. This is the exact opposite to the structure defined by the counts.

"It is not clear just how the hand-operating member of the Hudson 'Electric Hand' is mounted, but it appears to follow the conventional pattern such as shown by Moorhouse, but only on a much reduced scale. In any event Kliesrath and Sanford have failed to establish that it has a movement such as required by the counts."

518

The correctness of this court's holding in the Kesling case is not questioned here. In that case Kesling's claims involving the limitation "longitudinal movements," with which we are here concerned, had been rejected by the Patent Office on the ground that if the claims were broadly construed, as they construed them, they were met by the prior art. Kesling contended that the limitation "longitudinal movements" should be construed to mean "longitudinal with respect to the operating means" rather than with respect to the axis of the vehicle. We agreed with Kesling in his interpretation in that case and said:

"It is appellant's contention that the examiner and the board misinterpreted the element above described, found in claims 21, 30 and 49. It is his contention that the longitudinal movements embraced in said claims clearly mean that the operating means is movable longitudinally with respect to itself, and not with respect to some other part or element not referred to in the claims.

"We are in agreement with this contention. Unless the words 'longitudinal movements' in the claims mean longitudinal with respect to the operating means, they would have no meaning at all without the aid of the specification, for any movement of such means would be longitudinal with respect to some part of the vehicle.

"Unless the meaning contended for by appellant be given to said words, they are ambiguous because not related to any point or plane, and in such case it is proper to resort to appellant's specification to ascertain the proper construction. In re Phelps et al., 47 F.2d 387, 18 C.C.P.A., Patents, 1036.

"An examination of appellant's specification clearly shows that the longitudinal movements referred to in the claims are movements longitudinal with respect to the axis of the operating means, and in no other way could appellant's structure accomplish the result secured by him."

██ As before stated, it is the position of Kliesrath et al. that in view of the rule that counts for interference purposes must be given the broadest interpretation the language will readily permit our construction of the identical language here involved must be ignored. It might also be added here that we are confronted with numerous holdings of this and other courts to the effect that in interference proceedings involving a patent "claims once granted must be given the broadest interpretation that their terms will reasonably permit." The language quoted is from this court's holding in Thompson v. Pettis, 44 F.2d 420, 421, 18 C.C.P.A., Patents, 755. This court held, in Wilcox v. Danner, 53 F.2d 711, 19 C.C.P.A., Patents, 802, that interference counts must be broadly construed and if such interpretation would result in double patenting because of issued patent to one party it is a matter for ex parte consideration by the Patent Office.

It will be noticed that in each of the last above-cited cases no such situation prevailed as that at bar.

██ In the instant case, as was pointed out by the examiner, if the claims are interpreted in accordance with the contention of Kliesrath et al. the counts would read upon the Moorhouse patent and would therefore not be patentable, but construing them as the court did in the Kesling case the claims distinguish from Moorhouse and since they both read upon the disclosures of both parties when so construed and since this is an interpretation given them by the tribunals below in the instant action to avoid the prior art, we think that interpretation is the proper one for us to consider in determining the issues presented in this appeal.

Concerning the interpretation and with respect to the Moorhouse patent, the examiner said:

As to the second issue raised by party Kliesrath et al. again it is clear from the discussion by the court in the Kesling case that the terms 'laterally' and 'longitudinally' refer to movements of the *control lever with respect to itself* and since this is not true of the lever 27 of Moorhouse, it must be held that counts 1 and 2 are not readable on Moorhouse and are, therefore, patentable to Kesling. [Italics quoted.]

"To summarize, the decision of the Examiner denying the motion as applied to counts 1 and 2 must be adhered to, as the counts are believed readable on the party Kesling and are not anticipated by the patent to Moorhouse. Since the counts are patentable to party Kesling, an interference exists in fact."

This view of the examiner was followed by the board.

Moreover, we think the rule laid down in Kauffman v. Etten el al., 97 F.2d 134, 25 C.C.P.A., Patents, 1127, and followed in a number of other cases, is applicable here,

which rule is to the effect that when the tribunals of the Patent Office interpret the counts of an interference in a certain manner for the purpose of rendering the counts patentable over the prior art this interpretation will be accepted by us in our consideration on appeal.

█ It follows from the foregoing that since the claims must be interpreted in accordance with the holding in the Kesling case the tests of the devices on the four last-mentioned cars do not amount to a reduction to practice.

█ Our holding here as to the testing of the devices on the four last-named cars, which are different from the device used on the Dodge car and which do not, under our construction of the counts, respond to the elements of the same, also compels the conclusion that all acts concerning said tests are not to be considered in connection with the issue of continuing diligence pressed by appellants.

█ It follows that since Kliesrath et al. have failed to establish reduction to practice prior to the date for reduction to practice properly awarded to Kesling and the required diligence not having been shown, priority was properly awarded by the board to the senior party, Kesling, and its decision so doing is affirmed.

Affirmed.