34 C.C.P.A. (Patents)

## LONG v. YOUNG.
### Patent Appeal No. 5233.

Court of Customs and Patent Appeals.
Feb. 11, 1947.

Nelson J. Jewett, of Washington, D. C., for appellant.

Lewis E. Lyon, of Los Angeles, Cal. (Stephen W. Blore, of Washington, D. C., of counsel), for appellee.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, JACKSON, and O'CONNELL, Associate Judges.

BLAND, Associate Judge.

Appellant, Long, has here appealed from the decision of the Board of Interference Examiners of the United States Patent Office awarding appellee, Young, priority of invention defined by three counts which are claims in appellant's patent copied by Young for interference purposes. Although Long's patent issued while Young's application was pending, Young is the senior party.

Neither party took testimony, and upon Long's being required to show cause why judgment on the record should not be entered against him he came forward with a motion to dissolve on the ground that Young could not make the claims corresponding to the counts in issue.

There were a number of questions discussed before the examiner and before the board, many of which we need not refer to here. The controlling issue, and the only one which we think it is necessary to decide, relates to certain limitations in the counts as are hereinafter discussed.

The three counts involved read as follows:

"1. In a rotary table structure including a master bushing for arrangement in the table and having a central opening, *an opening in the table structure offset from the central opening,* a drive bushing to be removably carried by the master bushing, *a part projecting from the lower end of the drive bushing adapted to enter the offset opening for the transmission of rotation*

and to allow the lower end of the drive bushing to rest on the upper end of the table structure, the lower end of said part being engageable with the upper end of the table structure when said part is out of alignment with the offset opening, and a pilot element extending from the lower end of the drive bushing to enter said central opening and centralize the drive bushing so that said part is readily entered in said offset opening and turnable in said central opening so that relative turning between the drive bushing and table structure will cause said part to enter the offset opening.

"2. A Kelly bushing for use with a rotary table assembly *having a central opening and openings spaced about and spaced from the central opening comprising a bushing body, spaced parts projecting from the lower end of the body adapted to be entered in the second named openings for the transmission of rotation* from the table assembly to the body, and a pilot element on the lower end of the body projecting downwardly beyond said parts adapted to turnably engage in the central opening to centralize the body relative to the table assembly so that said parts may be readily entered in said second named openings by relatively turning between the bushing and table assembly.

"3. A Kelly bushing for driving a Kelly and adapted for use with a rotary table assembly *having a central opening and an offset opening, the Kelly bushing comprising a body to engage around the Kelly and adapted to rest on the upper end of the table assembly, a part projecting from the lower end of the body to engage in the offset opening for the transmission of rotation* from the table assembly to the body when the body is resting on the upper end of the table assembly, means carried by the body for transmitting rotation to the Kelly, and a split sleeve assembled around the Kelly and carried by the body to project from its lower end, the sleeve being turnably engageable in the central opening so that said part may be readily entered in said offset opening by relative turning between the body and table assembly. [Italics ours in each count.]

The invention relates to an important portion of oil well drilling equipment, particularly that which is used in rotary drills, and relates specifically to a rotary table structure through which, and by which, the drill and the pipe connecting it with the table assembly on the surface of the ground may be assembled or quickly removed without damage to the table. The invention involves a consideration of what is known as a Kelly and a Kelly bushing. For instance, Long, in describing his invention in his specification, says: "The master bushings of rotary tables have for many years been formed with a central opening having a flat walled polygonal upper portion for receiving the drive bushing or Kelly bushing, to provide a torque drive to the Kelly bushing, and a lower portion that is conical or tapered to receive the slips. With the present day drilling practice it is desirable to employ long slips and to provide increased bearing surfaces in the master bushing for receiving the lengthened slips. Master bushing and Kelly bushing assemblies have recently been introduced in which the central opening of the master bushing is tapered to the top of the master bushing to provide ample bearing surfaces for the long slips and the Kelly bushing is formed to seat on the top of the master bushing. In this last named construction the Kelly bushing has pins projecting from its lower side and received in spaced openings in the top of the master bushing to transmit rotation or torque from the master bushing to the Kelly bushing. The new type of bushing construction is successful and effective but has certain disadvantages. Considerable difficulty is often encountered in centering or orienting the new type of Kelly bushing to bring its torque transmitting pins into alignment with the openings in the master bushing. If the Kelly hangs out of alignment when being lowered into position it is often necessary to resort to sledging, barring, or other time consuming operations to bring the Kelly bushing into position to enter its pins into the openings of the master bushing.

The drawings in the record are so complex and indistinct that it would not be helpful to reproduce them here. The par-

ticular critical points of difference between the drawings of the respective parties are difficult of precise description.

As to the nature of the invention defined by the counts, we think it sufficient to say that Long shows a main table bushing at the side of which, and in the table structure, are four openings offset from the central opening. Superimposed upon this portion of the table structure are spaced parts projecting from the lower end of the body adapted to enter the spaced offset openings in the body portion of the structure.

Young, as was found by the tribunals below, performs the same function (although this is not agreed to by Long) by providing an opening or aperture in the lower structure offset from the conical central opening, which is square except that it has rounded corners. He also discloses a projecting member, projecting from the bottom of the top member, of the same size and shape as the opening in the lower body. His application discloses that through both the downwardly extended portion and the walls of the offset opening apertures are made for the insertion of pins.

By employing the above-described members, each party accomplishes the same necessary and important function in operating the drilling device as aforesaid.

The question with which we are here concerned is whether or not Young's disclosure responds to those portions of the counts which have been italicized above. In other words, referring to count 1, has Young an opening "offset from the central opening" and has he a "part projecting from the lower end of the drive bushing" which is "adapted to enter the offset opening"? The issue is the same with respect to count 3.

In count 2, it will be noticed that the language in controversy is "having a central opening and *openings* spaced about and spaced from the central opening comprising a bushing body, *spaced parts* projecting from the lower end of the body adapted to be entered in the second named *openings,* etc." [Italics ours.] One of the main questions presented with respect to this count is that, assuming that Young has disclosed one opening and one comparable projecting member, has he disclosed more than one of each as called for by the count?

The examiner very clearly stated his conclusions on the questions involved in the right to make the counts and held that if Long's openings were offset Young's openings were also offset and that the same was true with reference to the spaced parts which entered the openings.

In order to make such a holding it was necessary for the examiner to hold that the continuous opening in the form of a square which is offset from the conical central opening of Young should be regarded as more than one opening; that is to say, that each side of the square performed the functions of an opening and that therefore there was more than one opening as is called for by count 2, and that the same reasoning applied to the spaced parts which entered into those openings. In deciding this question the examiner said: Count 2 is directed to the *kelly* bushing for the table. The principal difference over count 1, otherwise, is in including "openings" spaced about and from the central opening and spaced parts thus requiring a plurality of engaging elements. *It is believed that each side of the square recess * * * and square flange * * * can be considered properly as distinct opening and part respectively.* In transmitting torque from the outer to the inner bushing the points of contact would be interrupted between the sides and each would act as a distinct entity. The flange would engage the surface of the table while the pilot element * * * would centralize the body while allowing relative turning movement. This count therefore reads on the disclosures of the party Young. [Italics ours.]

The board in its decision agreed with the examiner's position in every particular and quoted from the examiner's second decision made on reconsideration, as follows:

"The Young disclosure includes recess or recesses * * * between the master bushing * * * and the table * * * and hence constituting one or more openings in the table structure 'offset' from the central opening * * *. The bushing * * * includes flanges * * * which

until aligned with recesses * * * would inherently rest upon the upper face of the table and when aligned laterally by the pilot * * * and angularly by rotating the table said flanges drop into the recesses * * * to complete the drive. This structure is described on page 6, last line, page 7, lines 1–5 and page 10 paragraph 2.

"The recesses are just as much 'offset' as those in the patent to Long from which the counts are taken

"The argument as to Young's claim 25 is irrelevant. The present counts do not contain the specific subject matter referred to in the office letter of March 13, 1943.

"The walls of the recesses and the flanges are straight and continuous and hence it is quite clear that drive is transmitted through the flange as well as the edge of the table. The latter is not precluded by the language of the counts. The counts do not include any drive between master bushing and the drive bushing.

"Although the brief filed in behalf of party Young does not stress the matter of the offset opening or openings and the depending parts, it was made apparent by both parties at the hearing that this feature constituted the matter at issue.

"It is clear that the flanges * * * are equally well defined as projecting from the lower end of the drive bushing and when they enter the recesses * * * they allow the bushing to rest on the upper end of the table structure."

Both tribunals of the Patent Office gave the issues of the case very careful consideration. Both parties hereto have fully briefed and argued the same issues here, and we cannot say that the concurring tribunals of the Patent Office were in error in holding that the controverted limitations in the counts at bar are disclosed in the Young application.

Long emphasizes that his invention relates to an improvement on a "pin" torque transmission type Kelly bushing while Young's disclosure is of the polygonal opening type, and argues that his type has advantages over that of Young's. We think this is beside the question. The counts contain no specific reference to such alleged

difference and Long cannot read limitations into the counts with respect to such subject matter.

Long has urged here, as he did below, that to construe the counts as the tribunals below have done renders them unpatentable in view of the patent to Black et al., 2,182,938, December 12, 1939. This issue seems to have been decided by both the examiner and the board but it is not a matter of concern here because the counts have not been construed narrowly for the purpose of avoiding the prior art and we, of course, under this jurisdiction, are not concerned with the patentability of the counts. This question is a matter for ex parte consideration in the Patent Office.

It is a general rule, to which there are certain exceptions or limitations, that in this jurisdiction it is our duty to give the counts in interference the broadest construction that the language thereof will reasonably permit. Hagen v. Cords, 88 F.2d 998, 24 C.C.P.A., Patents, 1128. In certain instances where the language is ambiguous resort may be had to the application in which the counts arise. Malm et al. v. Schneider, 101 F.2d 201, 26 C.C.P.A., Patents, 783. It is another rule, not involved here, that where the board gives counts a narrow construction for the purpose of avoiding the prior art we will likewise give the counts the same construction. Kauffman v. Etten et al., 97 F.2d 134, 25 C.C.P.A., Patents, 1127; Kliesrath et al. v. Kesling, 154 F.2d 514, 33 C.C.P.A., Patents, 1008.

The counts at bar are not ambiguous and we are giving the same construction to them as was given by the board. It clearly follows, therefore, that we cannot go into the prior art to determine the question as to whether or not the counts, if given the construction which we are giving them, render the claims invalid. It must be remembered that this is not an infringement suit.

Long has referred to a number of other patents and has included them in the record. This was with a view of explaining what the prior art discloses. Some of them are not proper portions of this record, and, as

stated before, in view of our conclusion it is not necessary to consider the arguments raised by Long with reference to the disclosures in the prior art patents cited and discussed.

■ The decision of the Board of Interference Examiners awarding priority of invention in the three counts in issue to appellee is affirmed.

Affirmed.