41 C.C.P.A.(Patents)

**Application of HOLLMAN.**
Patent Appeal No. 6054.

United States Court of Customs and Patent Appeals.
May 27, 1954.

**324**

McCanna & Morsbach, Chicago, Ill. (John M. McCanna, Mason, Kolehmainen, Rathburn & Wyss, Walther E. Wyss, Chicago, Ill., of counsel), for appellant.

E. L. Reynolds, Washington, D. C., for the Commissioner of Patents.

Before O'CONNELL, JOHNSON, WORLEY, COLE, and JACKSON (retired), Associate Judges.

JACKSON, Judge.

This appeal is from a decision of the Board of Appeals of the United States Patent Office affirming that of the Primary Examiner finally rejecting claim 46 of an application, Serial No. 642,941, filed January 23, 1946 for Automatic Lighting and Control Means. Twenty claims were allowed.

The involved claim was copied by appellant for interference purposes from a patent to Antrim, No. 2,520,298, dated August 29, 1950, upon an application, Serial No. 611,356, filed August 18, 1945. The involved claim reads as follows:

46. In a gas range having a top pilot burner, an oven with a main burner therein, a safety pilot arranged to serve said main burner, gas supply means for said oven burner including a safety valve means controlled by said safety pilot and manual valve means, and gas supply means for said safety pilot subject to said manual valve means: means providing ignition for said safety pilot from said top pilot burner, and including flash pilot burner means, flash tube means arranged to receive a gas charge from said flash pilot burner means, and have ignition of said charge from said top pilot burner, and means providing gas supply for said flash pilot burner means, and including valve means responsive to said safety pilot, to cut off said flash pilot burner means upon safety pilot ignition, and to pass gas to said flash pilot burner means upon safety pilot outage.

The invention relates to an oven burner ignition system in a gas range by reason of which the main oven, which is usually situated below the main top burners and top pilot burner of the conventional range, may be lighted with safety when desired. The means for lighting the main oven burner includes a safety pilot burner, which is located adjacent to the main oven burner and which safety pilot burner is to be lighted and remain so as long as the main oven burner is turned on.

The claim was rejected as not readable upon the application of appellant.

The sole issue before us is the interpretation of the claim. It was held by the Patent Office tribunals that every limitation of the claim is disclosed by appellant except "means providing gas supply for said flash pilot burner means, and including valve means responsive to said safety pilot, *to cut off said flash pilot burner means upon safety pilot ignition*." (Italics ours.)

It is conceded that in the Antrim patent the meaning of the quoted portion of the claim is clear.

In interpreting the claim, it was the opinion of the examiner that the recitation of the above quoted means, particularly with reference to the last phrase thereof beginning with the words "to cut off," must be interpreted as referring to the "valve means," and that the valve means disclosed in the application is not responsive to the pilot valve "to cut off" the flash pilot burner, but rather is moved to a cut-off position by a timer means not responsive to the pilot valve. The examiner stated that, in the operation of the system, the pilot responsive thermocouple of appellant operates merely to retain the valve means in a cut-off position after it has been moved there by the timer. The examiner also pointed out that if the claim be regarded as ambiguous, the Antrim patent, from which it was copied, must be considered and, in that event, in the device of the patent the burner is immediately cut off by another burner and is not, as in the disclosure of the application, merely a retaining means after another means has cut off the burner.

It is a contention of counsel for appellant that in interpreting the language of the claim the clause "to cut off said flash pilot burner means upon safety pilot ignition" applies to the portion of the claim which recites "means providing gas supply * * *" instead of to the intervening clause "and including valve means responsive to said safety pilot" for the reason that the clause last quoted follows the comma. Counsel strongly contends that the claim thus interpreted reads on his device and further argues that even if the claim be interpreted as meaning that the reference to cutting off the flash pilot burner means applies to the "valve means responsive to said safety pilot," it still reads upon his disclosure for the alleged reason that there is no requirement in the claim that the "valve means" be moved to its cut-off position in response to the safety pilot but only that it be maintained in that position in response to the action of such element.

There can be no question that, when a claim is copied from a patent, the applicant copying the claim must show that he is clearly entitled to make it and any doubt thereon must be resolved against him. Lindley v. Shepherd, 58 App.D.C. 31, 24 F.2d 606, 1928, C.D. 97; Edgerton v. Kingsland, 83 U.S. App.D.C. 1, 168 F.2d 121. It is also elementary that, if an applicant makes a claim for the purpose of provoking an interference, all limitations in the claim must be considered as material. It is also a well settled principle of patent law that if ambiguity exists in the language of a claim, it must be interpreted in the light of the case in which it originated. Lindley v. Shepherd, supra, and Neumair v. Malocsay, 77 F.2d 622, 22 C.C. P.A., Patents, 1349.

It is clear that in the Antrim patent there is a positive action in the cutting off referred to with reference to the closing of a valve. This does not appear in the disclosure of appellant.

Furthermore, in our opinion, appellant is unable to make the claim for lack of disclosure of any kind of means to cut off the pilot upon safety burner ignition. The means disclosed by appellant for cutting off the pilot is actuated by a manually initiated timing device. That device so initiated closes the valve, thereby cutting off the flow of gas to the flash pilot subsequent to the manual movement of the main valve. The valve which cuts off the pilot is held closed by the timing device for a considerable length of time subsequent to which it is held in closed position by a magnet, after the safety pilot is lit and released when the pilot is not lit.

From what we have hereinbefore stated, in our opinion the connection of the safety pilot in the device disclosed by appellant has no function in the actual cutting off of the flash pilot. It seems to us that, whether or not the pilot of appellant is lighted, it will be cut off by the timing device and held there for a first period and that its only control by the safety pilot is to keep the valve in a con-

tinuously closed position after it has first been closed and then released by the timing device. In our opinion, the language of the claim to be construed here is that the flash pilot is "cut off upon ignition" of the safety pilot. It certainly calls for a positive act taking place at a definite time. The ignition of appellant's safety pilot merely serves to maintain a cut-off position when such connection is established by the manually initiated timing device.

We have no doubt that the device described in the language of the claim is not the device disclosed by appellant. We are fortified in that respect in giving the language its normal meaning in the light of the patent where it originated.

For the reasons hereinbefore set out, the decision of the Board of Appeals is affirmed.

Affirmed.

JACKSON, Judge, retired, sat in place of GARRETT, Chief Judge.