49 CCPA
**Application of Oliver Kenneth KELLEY.**

**Patent Appeal No. 6755.**

United States Court of Customs and Patent Appeals.
Aug. 2, 1962.

Frank J. Soucek, Washington, D. C., and Theodore L. Chisholm, Birmingham, Mich., for appellant.

Clarence W. Moore, Washington, D. C. (George C. Roeming, Washington, D. C., of counsel), for the Commissioner of Patents.

Before WORLEY, Chief Judge, RICH, MARTIN and SMITH, Judges, and Judge WILLIAM H. KIRKPATRICK.*

SMITH, Judge.

Applicant has appealed from a decision of the Board of Appeals, adhered to on reconsideration, which affirmed the examiner's final rejection of claims 110 through 113, inclusive, of appellant's application for patent Serial No. 431,868, filed May 24, 1954, for a "Multiple Stage Torque Converter Drive".

The examiner rejected the appealed claims solely on the ground that they are not supported by the disclosure. The sole issue to be decided in this appeal is whether the board was correct in affirming this rejection. Appellant, at oral argument, withdrew claim 112 from this appeal. Claim 110 was treated by the board as representative of the remaining claims 111 and 113 on appeal. Therefore, our decision as to whether claim 110 is supported by the disclosure is dispositive of that question for all claims on appeal.

Appellant's application discloses a complex hydraulic transmission for motor vehicles. A complete description of appellant's invention is unnecessary since the issue on appeal directly concerns only a part of appellant's invention. The particular part involved is a power-operated clutch or an equivalent friction device which is engaged by hydraulic pressure and has a timing device which controls the rate of flow of the hydraulic fluid to cause the force engaging the clutch to rapidly move the clutch to the position

---

* United States Senior District Judge for the Eastern District of Pennsylvania, designated to participate in place of Judge O'CONNELL, pursuant to provisions of Section 294(d), Title 28 United States Code.

of initial engagement, and then solely increase the engagement force until the clutch is completely engaged. Such a rapid initial movement is desirable in order to reduce the time necessary for initial clutch engagement, and thereafter to build up a gradual increase in pressure to gently and smoothly complete engagement. A portion of figure 12 from the specification is reproduced below and shows the only portions of the mechanism with which we are here concerned.

Claim 110, which as previously stated, is representative of all appealed claims, is as follows:

"110. A device for the automatic control of friction means, comprising in combination [1] *a power driven actuator* operative to produce an actuating force for the engagement of said friction means, an adjustable power control member for controlling said actuator, a source of power providing an actuating force, connecting means connecting said power driven actuator with said source through said power control member including [2] *means for reducing said actuating force supplied by said source,* a time-controlled element movable under the influence of a force and adapted during movement thereof to control the rate of engagement of said friction means by said power-driven actuator, [3] *means for reducing the strength of said last-mentioned force* during the largest part of movement of said time controlled element, and means operatively connecting said time controlled element with said power control member and said first-mentioned reducing means, to provide timed adjustment of said actuator to first move said friction means into slight engagement, to thereupon build up friction at a slow rate to a value at which said friction means ceases slipping, and to subsequently increase said friction well beyond said value." [Emphasis added.]

It is the position of the board and solicitor that the first two emphasized portions of the claims cannot be supported by appellant's specification because the only structure in appellant's invention which can be a "reducing means" is the valve comprised of port 206, the upper land of piston 200 and member 203, shown above. Since this valve must be the element defined in the third emphasized portion of the claim, and since the first emphasized element, the power-driven actuator, is piston 44 and cavity 49, the second emphasized element finds no support in the specification.

Appellant's interpretation of the claim, presented before the board and before this court, is as follows: Element [3] of the claim is the valve 200, 203, 206 as interpreted by the board above. Element [1], the "power-driven actuator", is

piston 44 alone, and element [2], the "means for reducing said actuating force", is "expanding cavity 49".[1]

The board's objection to appellant's interpretation was stated in its initial opinion as follows:

" * * * we do not agree with the appellant that the piston 44 by itself constitutes the power-driven actuator recited in the claim. Necessarily the actuator includes the piston and the cylinder in which it is located. We do not agree with the appellant that the means for reducing the actuating force supplied by the source, which is recited in the claims, is the expanding cavity 49 in the present case because this cavity is an inseparable part of the cylinder and piston constituting the power-driven actuator and may not, therefore, be properly included as a separate and independent element from the power-driven actuator. To do so would be misleading and indefinite. * * *"

The solicitor argues that the "actuator" cannot be the piston 44 alone, but must include both the piston 44 and its cylinder [2] (or expanding cavity 49), since a piston alone cannot produce an actuating and that the "means for reducing said actuating force" (element [2] of claim 110), must include the piston 44 and its cylinder 49 since the means to reduce the force must include both the cylinder and the piston 44 which define the limits of the expansion area. Therefore, the solicitor argues, there is no support in the specification for elements [1] and [2] of the claims since it requires the *double inclusion* of both piston 44 and cylinder 49 in order to read the claims on the disclosure. As authority for the position that the clams are not supported because of the *double inclusion* of elements 44 and 49, the solicitor cites Holdsworth v. Goldsmith, 129 F.2d 571, 29 C.C.P.A. 1047; Kreidel v. Parker, 97 F.2d 171, 25 C.C. P.A. 1242 and Frank v. Hollerith, 159 F. 2d 774, 34 C.C.P.A. 863.

■ Before deciding the question of whether the claims are in fact supported by the specification or whether a supporting disclosure is barred because of *double inclusion*, it is noted that the claims on appeal were copied by appellant from a patent to Forster,[3] presumably for purposes of interference. The solicitor, throughout his brief, in urging acceptance of the board's interpretation of the claims, has referred to the disclosure of Forster to show that Forster's invention shows distinctly separate structures for each of the emphasized elements of the copied claims. However, at oral argument, the solicitor stated that the claims are not ambiguous. Therefore, the fact that the appealed claims originated in the Forster patent is immaterial. If an ambiguity exists in the language of a claim (or a count in an interference proceeding), it should be interpreted in the light of the specification from which

1. The examiner and board apparently did not question whether an "expanding cavity" actually would reduce the hydraulic pressure supplied by the source (a pump). As stated in appellant's brief:

"The force on the piston 44 is reduced when oil flows into the *expanding* cavity 49 regardless of all other considerations. Neither the Examiner nor the Board has ever questioned the fact that the pressure in the cavity 49 is reduced below the maximum pressure of the pump when the oil is first directed to the cavity. On the contrary the Examiner has expressly admitted it in the following language 'the pressure of the fluid is determined by the expansion of the clutch and accumulator cavities' * * *. This express agreement of the Examiner and the tacit agreement of the Board are in accord with well known, generally understood, fundamental principles of hydraulic engineering, namely that when liquid under pressure flows into an expanding cavity the pressure in the cavity is reduced below the pressure available at the source as long as the cavity is expanding. * * *"

2. The solicitor's brief states that element 49 must be the *cylinder* surrounding the expanding cavity, since a "cavity is not a structure, but a space demarked by a structure". Element 49 is hereinafter referred to as "cylinder 49".

3. No. 2,807,968, issued October 1, 1957.

it originated. In re Hollman, 213 F.2d 323, 41 C.C.P.A. 937; Frank v. Hollerith, supra. If the claim or count contains no ambiguity, it should be given the broadest construction the language thereof will *reasonably* bear *without* resort to the specification from whence it originated. Long v. Young, 159 F.2d 766, 34 C.C.P.A. 871; Daley & Talarico v. Wiltshire, 293 F.2d 677, 49 C.C.P.A. 719. See also Ex parte Hein (PO Bd.App.), 114 USPQ 175.

The language of the appealed claims under consideration, emphasized in claim 110, supra, is as follows:

"[1] a power-driven actuator operative to produce an actuating force for the engagement of said friction means,

"[2] means for reducing said actuating force supplied by said source,

"[3] means for reducing the strength of said last-mentioned force."

We do not think these terms are ambiguous so as to require reference to the Forster disclosure. Although the words "actuator" and "means" are broad in that they may include a number of various different structures which serve the same function, they are not ambiguous. Therefore, the question to be decided is whether appellant's disclosure supports the emphasized language of the claims, supra, giving this language the *broadest construction reasonable*. We think that this question should be answered affirmatively.

The function of appellant's cylinder and piston can best be understood by reference to the schematic diagrams reproduced below.

(a)  (b)

In the above diagrams, the piston and the clutch mechanism are shown schematically performing the two separate functions of the piston. In position (a), shown in the first diagram, the clutch mechanism is disengaged. When the "adjustable power control member" is shifted to start clutch engagement, the expanding cavity begins to fill with hydraulic fluid as indicated by the arrow and the piston moves toward position (b). As stated in appellant's brief:

"* * * Whenever oil pressure is initially supplied by the shift control valve 230 * * * to the clutch, oil under pressure initially flows into a cavity * * * 49 which expands rapidly to take up slack and to

move the clutch plates * * * into slight or slipping engagement. The engagement is slight because the oil is flowing into an *expanding cavity, therefore the pressure in the cavity is reduced below the pressure which the pump can supply,* and this produces a reduced force which engages the clutch * * * permitting slip. Such initial slip is inherently necessary in connecting without shock two parts rotating at different speeds (one of which may be *zero*)." [Emphasis added.]

Until the piston reaches position (b) in the second diagram, it does not act as part of a "power actuator" to actuate the clutch plates. In its initial position

and throughout its movement until it engages the clutch plates, the piston moves in the cylinder and with the inner walls of the cylinder forms an "expanding cavity" which is effective as the claimed "means for reducing the actuating force". When the piston reaches position (b), its further movement is retarded by the clutch mechanism and it now acts as a "power-driven actuator" which applies an increasing force upon the clutch plates after initial engagement. The piston at this time *ceases* to act effectively as an expanding means for reducing pressure because the actual distance traveled beyond the point of initial engagement of the clutch plates is very small, since the clutch plates are in contact at position (b), and additional force on the piston only increases the frictional resistance to relative rotation and does not appreciably increase the volumetric cacapity of the now expanded cavity. As stated in appellant's brief:

> " * * * Somewhere during the increase of clutch or brake pressure, the friction force in the clutch exactly equals the opposing force of the resistance of the vehicle, and at this point the clutch stops slipping. Thereafter, the friction is increased well beyond the value of the friction at the moment the clutch stops slipping because the system (like every system of this character) is necessarily designed to provide a maximum friction well beyond the greatest possible slipping friction. * * * "

In the above analysis, cylinder 49 acts both as a housing for the piston in position (a) to form the "means for reducing said actuating force" and also as a housing for the piston in position (b) to form the "power-driven actuator". We agree with the solicitor that the piston 44 cannot alone constitute a "power-driven actuator" and that element 49 must be the cylinder rather than a mere cavity. We do not agree, however, with the solicitor that our above application of appellant's disclosure to the claim, which requires the cylinder to serve as a housing for piston 44 which also performs a dual function, and which therefore may be said to *doubly include* the cylinder 49 and the piston 44, cannot be said to be a *reasonable* interpretation of the language of the claims. We see no reason why a single structural element such as piston 44, which performs two separate functions, cannot support a claim reciting broadly these separate functions. Such an interpretation of the claims is reasonable because even though this piston is contained in a unitary housing during both its functions, the piston does in fact perform two distinct and separate functions, reducing the pressure and engaging the clutch or other friction means. An arbitrary application of the "rule against double inclusion" to the facts in this appeal, leads to a result which is contrary to what we think is a reasonable interpretation of the claims on appeal.

In Kreidel v. Parker, supra, cited in the solicitor's brief, the court held that a party in the interference could not rely upon the filing date of an earlier foreign application since that application did not support the count in interference. The count called for "A tube coupling comprising a body having * * * a shoulder formed therein as an abutment for the end of the tube and having a flaring mouth leading to said shoulder * * * ." The German application disclosed a tube with a continuous flare or taper and with no shoulder. The court agreed with the Examiner of Interferences that:

> "It is not believed that the count, as thus construed, is readable on Kreidel's German application. The shoulder, which is a vital element, is recited as distinct from the flaring mouth. In attempting to read the count on the German application, it is not possible, until the tube is inserted, to tell where the shoulder ends and the flaring mouth begins. It is thought that the count requires that the shoulder and mouth be distinct parts and not arbitrary divisions of a single element. Kreidel

will accordingly be restricted to his date of filing in this country—October 25, 1933."

It is noted that the count *structurally* recited two distinct elements, a "shoulder" and a "flaring mouth leading to the shoulder." We agree that the count could not be reasonably interpreted to read on the foreign disclosure since it could not be determined where the flared or tapered portion of the tube ceased to be the "flaring mouth" and started to function as the "shoulder". It is also questionable if such a flared tube end could be properly construed to constitute a shoulder at all. Our interpretation of appellant's disclosure as applied to the appealed claims can be distinguished from the facts of this case since appellant's piston and cylinder perform different functions at distinctly different times. Separation of their functions does not require an arbitrary structural division which was held to be objectionable in Kreidel v. Parker, supra.

Frank v. Hollerith, supra, cited by the solicitor, held that a party to the interference could not make the count for a combination wheel and axle support. The facts of the Frank case are similar to those of Kreidel v. Parker, which it cites, in that the court held it an unreasonably broad interpretation of the count which required the arbitrary division of a single, integral structural element.

In Holdsworth v. Goldsmith, supra, this court held that Goldsmith's structure fully supported count 3 in the interference under the "rule" of Kreidel v. Parker, supra. Cited on page 575 of 129 F.2d, of 29 C.C.P.A. on page 1053 are two decisions of the Commissioner which are factually close to the present case.

In Ex parte Duncan, Prichard, and Macauley, 1906 C.D. 348, 124 O.G. 1207, the appealed claim called for two elements, a "latch" and an "actuating connection". In holding that the claim was properly supported, Commissioner Allen stated:

"The Examiners-in-Chief have found that this cross-pin is the latch recited in the claim, but hold that there is no other element which may be regarded as 'an actuating connection coupled with one mold-blade section.' The actuating connection referred to evidently comprises the cross-pin and the means for moving the same laterally to eject the type. It appears, therefore, that the cross-pin serves not only as a latch to hold one section of the mold-blade relatively to the other, but also as one element of the actuating connection which ejects the type. *No valid reason is apparent why the actuating connection and one of its elements should not be independently recited in the claim. The function of said element is distinct from that of the actuating connection.*" [Emphasis added.]

In Ex parte Hammond, Jr., 1924 C.D. 43, 326 O.G. 681, First Assistant Commissioner Kinnan, in answering the argument that a reference did not anticipate one of appellant's claims, stated:

"Where several sets of mechanisms cooperate to produce the desired result, a claim which recites these separate sets of mechanisms and their respective functions is not, ordinarily, objectionable as including an element twice *because some one element, such as a power shaft, a drive gear, or a source of electric or other energy, is common to and cooperates with all such sets of mechanisms.*"

We note also the Board of Appeals decision of Ex parte Eugene V. Myers, 7 USPQ 243, wherein it was stated:

" * * * claims 10, 19, 20, and 21 were objected to on the * * * ground that the "means for holding said check in working position" and the "means for confining said check in nonworking position" are one and the same element twice included, and that both refer to the shoulder past which the check is forced into the body of the casing.

\* \* \* \* \* \*

"As to the objection that claims 10, 19, 20 and 21 twice include the same element, it may be stated that this form of claim is supported by Ex parte Duncan, Prichard & Macauley (123 O.G. 1207; 1906 C.D. 348), in which it was held in effect that where an element performs two functions in a general organization such element may be properly twice included in the claim." [Emphasis ours.]

We think the reasoning in these three opinions is sound. In the claims on appeal several mechanisms do in fact cooperate to produce a desired result. The fact that one or more structural elements performing more than one function are common to the mechanisms which are recited separately in the claims does not prevent the claims from being sufficiently supported by the disclosure.

In a case such as this, where there is no ambiguity in the language of the claims, they should be carefully analyzed to see if they can be *reasonably* found to be supported by the disclosed structure. We wish to emphasize that this case is not intended to support a rule that all elements which perform separate functions may be recited any number of times in the claims, nor is it intended to overrule or be inconsistent with cases such as Kreidel v. Parker, supra. Each claim in each case must be interpreted as broadly as its language will reasonably permit and each interpretation will depend upon the individual facts of each case. Automatic reliance upon a "rule against double inclusion" will lead to as many unreasonable interpretations as will automatic reliance upon a "rule allowing double inclusion". The governing consideration is not *double inclusion,* but rather is what is a reasonable construction of the language of the claims.

As previously stated, we think that claim 110, when construed as broadly as is reasonably possible, is supported by appellant's specification. The decision of the Board of Appeals is therefore reversed.

Reversed.

KIRKPATRICK, Judge, sat but did not participate in decision.