53 CCPA

**Application of E. Dare BOLINGER and Norman E. Klein.**

**Patent Appeal No. 7484.**

United States Court of Customs and Patent Appeals.

Feb. 24, 1966.

Rehearing Denied May 5, 1966.

Walter E. Mueller, Chicago, Ill., Norman C. Armitage, Spartanburg, S. C.,

John LaPrade, Solon B. Kemon, Washington, D. C., for appellants.

Clarence W. Moore, Washington, D. C. (George C. Roeming, Washington, D. C., of counsel), for Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, MARTIN, SMITH and ALMOND, Judges.

SMITH, Judge.

Appellants appeal from the decision of the board sustaining certain of the examiner's rejections of appealed claims 70 through 75. The appealed claims originated in U. S. Patent No. 2,864,229 to Seem et al.[1] and were copied into appellants' parent application here on appeal.[2] After nearly fourteen years of prosecution in the Patent Office, the parent application comes before us on appeal with appellants urging that the board erred in affirming the examiner's two grounds of rejection of the appealed claims.

The determinative issue here is whether the appealed claims are supported by the disclosure. Since we find that the board properly sustained the examiner's rejection that the appealed claims are not readable on appellants' disclosure, it is not necessary to review the board's affirmance of the rejection based on "double patenting" involving appellants' patent[3] No. 2,919,534.

Appellants' invention is directed to a method and apparatus for crimping thermoplastic yarns. Appellants state in their specification:

In its broadest form, this invention comprises moving a strand of thermoplastic yarn issuing from any conventional source through a heating zone in order to elevate the temperature of at least the outer micel-

1. Filed June 5, 1957, issued December 16, 1958, entitled "Apparatus For Thermally Processing Yarns."

2. Serial No. 274,358, filed March 1, 1952, entitled "Method And Apparatus For Crimping Thermoplastic Yarns."

3. Filed November 2, 1955, issued January 5, 1960, a continuation-in-part of the parent application here on appeal, entitled "Improved Textile Materials and Methods And Apparatus For Preparing The Same."

lar layer of the yarn to within the plastic range, immediately thereafter passing it over a sharpened edge, preferably in an acutely angular path, and finally collecting the crimped yarn upon a bobbin or the like.

An embodiment of the invention is shown in Fig. 1 of the application on appeal and is here reproduced.

In the specification, appellants explain the operation of this apparatus as follows:

\* \* \* Numeral 13 denotes a conventional yarn supply package, such as a pirn, bobbin, cake or the like. The yarn Y is unwound from this package and passed through a tension device 17, such as a spring-biased disc array. From the tension device, the yarn Y travels upwardly past one side of a blade element 19, over and around the sharpened edge 21 of the blade 19, making an acute bend as it does so, and thence downwardly through a guide 23 to a suitable take-up means, generally designated 25, such as a flanged bobbin 27 driven by a rotating cork-covered roll 29.

The blade 19 is wrapped with several turns of electrical resistance wire 35 to which current is supplied through conductors 33 from a variable transformer 31 connected to any desired source of current, not shown, by leads 34. Sheets of dielectric material, e. g., mica, are provided between the blade and resistance wire, as at 37.

Heat is supplied to the yarn by convection and radiation as it moves past the side of the blade and by conduction as it moves over the edge of the blade so that it is in a suitably plastic condition and capable of responding satisfactorily to the action of the blade in the interval during which it passes over the edge thereof.

The appealed claims consist of independent claims 70 and 75 and dependent claims 71–74. All of the appealed claims contain certain language which the board found was not supported by the disclosure. We think the appealed claims stand or fall together and the parties do not argue otherwise.

Appealed claim 70 is representative:

70. Apparatus for processing yarns comprising a creel for mounting at least one supply package of said yarn, a twister spindle, a traveler ring, a traveler, and feed means to ravel yarn from said supply package and feed the same at a preselected speed to the traveler and take-up package, *spaced guide means intermediate said creel and said twister spindle to direct the yarn in*

*a generally straight-line path during at least a portion of its travel, and heater means intermediate said spaced guide means operable to uniformly heat the yarn to a selected temperature during said portion of its travel.* [Emphasis added.]

The italicized portion of claim 70 represents that language found by the board not to be supported by the disclosure.

Having the benefit of the disclosure quoted above from the specification, we may proceed to determine whether claim 70 is supported by that disclosure.[4] Referring to claim 70, "spaced guide means" are "intermediate said creel and said twister." The specification is silent as to this terminology. This could be interpreted as meaning elements 17 and 23 are "spaced guide means" in Fig. 1, as element 23 is termed a "guide" in the specification and element 17 is a "tension device" which in fact serves as a guide. However, claim 70 further provides that these guide means "direct the yarn on a generally straight-line path during at least a portion of its travel," and that "heater means," intermediate said spaced guide means, "heat the yarn" *during* the "generally straight-line path" portion of the yarn's travel.

It is not readily understandable in what manner elements 23 and 17 can be said to "direct the yarn on a generally straight-line path" and also have heating of the yarn *during* this generally straight portion of travel. Appellants in one argument[5] explain that element 21, termed a "blade" in the specification, is a "guide," and that "blade" 21 and "tension device" 17 serve to direct the yarn in a generally straight-line path.

Accepting appellants' interpretation, claim 70 requires that "heater means" be positioned "intermediate said spaced guide means." Appellants explain that "blade" 21 is also the "heater means." Appellants maintain that "blade" 21 is one of a pair of "spaced guide means" and also the "heater means."

Appellants argue that the foregoing analysis clearly proves that the appealed claims are in fact supported by their specification and that as the terms of the claims are clear and unambiguous, the board committed clear error in resorting to the Seem patent, the origin of the appealed claims, as an aid in determining the meaning of the above terms.

The board, experiencing difficulty in understanding in what manner the appealed claims were supported by the disclosure, did turn to the Seem disclosure for assistance. The board found that its confusion disappeared as the Seem specification disclosed and the claims defined *an entirely different invention.* The board stated in its opinion:

* * * [Seem] involves no crimping. It is concerned with apparatus for thermally processing a traveling thermoplastic yarn while subjecting it to controlled degrees of tensile stress so as to impart uniform tensile characteristics to the yarn, and employs conventional guides * * * on opposite sides of a heater * * *.

In summary, we agree with the Examiner that the two cases involve distinctly different concepts and structures and that claims 70 to 75 find no reasonable basis in the in-

---

4. Appellants do not point to any specific portion of the specification as supporting claim 70 or the other appealed claims. While we have assumed that they rely on the specification as a whole, this manner of arguing that the claims are supported by the disclosure is not very helpful to us.

5. Appellants, as far as we are able to to determine from the record and briefs before us, have not stated specifically

what elements they regard as being "spaced guide means" as specified in claim 70. Their arguments vacillate between calling "guide" 23 and "tension device" 17 the "spaced guide means" with the "blade" 21 serving as the "heater means"; and calling "blade" 21 and "tension device" 17 the "spaced guide means" with "blade" 21 also the "heater means." In one argument, discussed infra in the text, the blade is said not to be a part of the appealed claims.

stant application. The rejection * * * is accordingly sustained.

We agree that there is "no reasonable basis in the instant application" for the appealed claims. The board found that the *disclosed* purpose of the blade was to crimp the yarn. It stated:

> * * * We * * * doubt that persons of ordinary skill in the art would reasonably read or consider the sharp blade edge * * * as one of the guide means of the claims. * * *

It is our opinion that claims 70 to 75 involve a different inventive concept and apparatus than that *disclosed* in the instant application, *notwithstanding that their terms may be so broadly construed as to vaguely read on the latter.* * * * [Emphasis added.]

We agree with the above reasoning. While one element may perform two functions, In re Kelley, 305 F.2d 909, 49 CCPA 1359, we think the sole disclosed purpose of the blade is to crimp the yarn and the yarn is guided about the blade by elements 17 and 23 rather than by the blade and element 17. It necessarily follows that the disclosure does not support the requirement of the appealed claims that the heater means intermediate the spaced guide means heat the yarn *during the generally straight-line portion of travel provided by the spaced guide means.*

Appellants argue conversely that it is not necessary to consider the blade a guide means:

> * * * It is merely incidental that the yarn as guided by either of said pairs of yarn guides in Appellants' disclosure (Figs. 1 or 2) directs the yarn about a blade member or in the alternative about an arcuate heating member and a blade member * * *.
>
> * * * * * *
>
> * * * Appellants' disclosure clearly supports each and every element of the Seem et al. claims irregard-

less [sic] of whether the blade is considered a guide means.

The apparatus claims on appeal are all directed to the processing of yarn by means of the apparatus elements set forth in the claims. None of these claims are drawn to edge-crimping or is any blade member set forth in the claims on appeal. * * *

The invention claimed in Seem is not concerned with the crimping of thermoplastic yarn, nor does it disclose any crimping of that yarn. It is concerned with subjecting a thermoplastic yarn to "controlled degrees of tensile stress, with and/or without correlated heat." As disclosed in the Seem specification, it was desired to supply spools of thermoplastic yarn which possessed uniform tensile strength.

In comparison, appellants sought to supply crimped yarn. The specification states only that fabrics made from crimped yarn possess "a pleasing appearance, desirable hand and good tensile strength," and that the "crimped yarn * * * will withstand operating tensions normally employed in the art, * * *." Concerning the tension employed during operations, the specification states that "optimum results" are obtained with "minimum" tension for lower denier yarns and higher levels of tension for higher denier yarns.

We find no disclosure in appellants' specification that supports claims to the Seem invention. We do not understand how appellants are assisted in their argument that the disclosure supports the appealed claims by disclaiming a blade and edge crimping, what we think is appellants' invention.

Appellants rely on several propositions of law, arguing as follows:

> * * * The mere reading of the count leaves no doubt that it is not in any way ambiguous. The Patent Office Tribunals therefore committed reversible error in permitting the construction of this portion of the count in the light of the Seem

et al. disclosure. The law on this point is clear and unequivocal. A search for meaning on interpretation is necessary only where there is ambiguity in the terms of the count, * * *. In the absence of ambiguity, counts broadly drawn must be given the broadest construction which they will reasonably permit and should not be construed in the light of teachings of the patent in which they originated. * * * [Citations omitted.]

We think appellants have misconstrued the rejection in this case. The claims stand rejected on the ground that they are not supported by the disclosure. There is no "count" before the court, as in interference cases.[6] The issue here is whether the appealed claims are supported by the disclosure.

The board, proceeding correctly in determining the issue as to support for the appealed claims, attempted to first find support in the disclosure for the embodiment of appellants' invention defined in the claims. It was unable to reach a determination because it found as we do that the language in the claims is ambiguous in the light of appellants' disclosure. Only then did it proceed to the Seem patent in which the appealed claims originated. The board then found that Seem in fact claimed a different invention. The claims are not ambiguous when read in light of the patent in which they originated and when applied to the various embodiments of the Seem invention there disclosed.

While appellants have the right to claims which claim something they have *disclosed as their invention*, the claims must be supported by the specification. We agree with the board that the appealed claims are not so supported and on this basis alone the decision of the board is affirmed.

Affirmed.

6. Appellants direct considerable argument to the "breadth" of the claims in Seem

in relation to the invention in Seem. This issue is not before the court.