**Thomas W. TECHLER and Richard G. Thompson, Appellants,**

v.

**Iven R. NORSTRUD and John H. Threlkeld, Appellees.**

**Patent Appeal No. 8877.**

United States Court of Customs and Patent Appeals.

April 5, 1973.

John D. Gould, Minneapolis, Minn. (Merchant & Gould, Minneapolis, Minn.), attorneys of record, for appellants.

Kenneth D. Siegfried, Joseph E. Ryan, Minneapolis, Minn. (Schroeder, Siegfried, Ryan & Vidas, Minneapolis, Minn.), attorneys of record, for appellees.

Before MARKEY, Chief Judge, and RICH, ALMOND, BALDWIN, and LANE, Judges.

MARKEY, Chief Judge.

This is an appeal from the decision of the Patent Office Board of Interferences awarding priority to appellees, the senior party. Appellees were patentees of United States Patent No. 3,140,049 entitled "Cleaning Apparatus with Relief Control Valve," issued July 7, 1964, on an application filed November 28, 1962. Appellants are patentees of United States Patent No. 3,246,845, entitled "Controls for High Velocity Washing Equipment," issued April 19, 1966, on an application filed June 11, 1964. On July 1, 1966, appellees filed application serial No. 572,164 for reissue of their patent with claims 11–18 copied from appellants' patent. The interference was declared after the Board of Appeals reversed the examiner's rejection of the claims for lack of support in appellees' application.

Appellants moved that the resulting interference be dissolved on two grounds: (1) that none of the counts is supported by the disclosure of appellees and (2) that appellees have no right to make the claims of the counts because of improprieties in the reissue oath. Consideration of the motion was deferred to final hearing. The board regarded the question of sufficiency of the reissue oath as not ancillary to priority and held it had no authority to decide it. Considering only the question of appellees' right to make the count, it awarded priority to appellees. We affirm.

OPINION

■ Appellants' charge that appellees cannot make the counts is based on appellants' disclosure of two separate, spaced pressure responsive devices and the allegation that appellees' disclosure includes but one such device. The elements of appellants' claims in question are underlined in representative count 1:

In a pressure washer, a power-driven pump having an inlet and an outlet connected by a flexible conduit to a spray head including a handle for directing the spray from said head, a first valve controlling flow through said head; conduit means for supplying liquid to the inlet of said pump and having a first branch connected to a source of water and a second branch connected to a source of cleaning fluid, a second valve controlling flow of water from said source through said first branch to said pump inlet, and a third valve controlling flow of cleaning fluid through said second branch to said pump inlet, the improvements which comprise; a by-pass conduit connecting the outlet of said pump to the inlet thereof, *an un-*

*loader valve interposed in said by-pass conduit and responsible to the pressure in said flexible conduit to open said unloader valve when the pressure in said flexible conduit exceeds a predetermined value;* a first electric switch; electrically energizable means for actuating said second valve; a first electric circuit including said switch and electrically energizable means, *and pressure responsive means communicating with the outlet of said pump and operatively connected to said switch whereby changes in pressure* in said flexible conduit resulting from alternate opening and closing of said first valve is effective alternately to supply water and cleaning fluid to said pump when in operation.

Appellees dispose in their bypass conduit a structure shown schematically in its two functional positions as:

Appellees rely on In re Kelly, 49 CCPA 1359, 305 F.2d 909, 134 USPQ 397 (1962). In that case, cited also in the board's decision, we held the structure shown schematically below in its two functional positions as supportive of two claim elements, i. e. a power driven actuator productive of an actuating force (a piston) and means for reducing said actuating force (an expanding cavity).

In *Kelley* we considered the fact of sequential operation wherein the expanding cavity functioned to reduce the actuating force and thereafter the piston, upon reaching the clutch, functioned as the power driven actuator. We neither find nor have been shown any reason to hold differently here where appellees' valve piston unseats first to function as an unloader valve and then, through the rod, to operate the switch in further response to pressure in the bypass conduit.

■ Appellants' arguments regarding "double inclusion" and ambiguity, as well as their reliance on Holdsworth v. Goldsmith, 29 CCPA 1047, 129 F.2d 571, 54 USPQ 90 (1942) and Kreidel v. Parker, 25 CCPA 1242, 97 F.2d 171, 37 USPQ 815 (1938) are all fully discussed in *Kelley*, supra. No useful purpose would be served in repeating that discussion. It is incorporated here as equally applicable to the facts before us. We would add that "double inclusion" is governed by 35 U.S.C. § 112 and is regarded as improper when it renders a count indefinite or where the separate structures are not clearly identifiable. Here we find the counts definite and the structures indentifiable.

■ Appellants do not contend that either the board or we have jurisdiction to decide the reissue oath question. Rather they urge that this question should have been disposed of in the Patent Office before any award of priority. That contention may well be correct. However, we see no reason why that matter should delay our determination of the ancillary matter of appellees' right to make the counts as already raised and argued here. The Patent Office is obviously the proper place for appellants to initiate any efforts to overcome the alleged error in the treatment of the reissue oath question. Our decision on the appeal as it is now before us is not intended to preclude the Patent Office from taking any otherwise appropriate action in response to any such efforts and, if it is ultimately determined that the interference should be dissolved for inadequacy of appellees' reissue oath, this court will be receptive to a motion to vacate the present decision.

For the foregoing reasons, we *affirm* the decision of the board.

Affirmed.

BALDWIN, Judge, (concurring).

I fully agree with the majority's disposition of this case, and merely wish to add some further observations.

Insofar as appellants' motion was based on alleged defects in appellees' reissue oath, said motion amounted to a motion to dissolve on the basis that the counts are unpatentable to the applicants (appellees). Such a motion is apparently permitted under Patent Office Rule 231(a), and Rule 231(d) provides in pertinent part:

> (d) All proper motions as specified in paragraph (a) of this rule * * * will be transmitted to and considered by the primary examiner * * *.

While Rule 231(d) does not specify *when* such motions are to be transmitted, it is obvious that if the rule is to mean anything, transmittal must take place prior to termination of the interference. The appropriate procedure in this case would have been to transmit the reissue oath phase of the motion to the primary examiner directly rather than deferring it to final hearing. After final hearing, the board was not precluded from ruling on the ancillary question of appellees' right to make merely because of the presence of this reissue oath phase of the motion in the case. However, I am of the opinion that the board should have transmitted the motion to the primary examiner prior to termination of the interference proceedings in the Patent Office. While the motion might also have been handled by a recommendation under Rule 259, the board found that the circumstances of this case did not warrant such a recommendation.

I agree with the majority that appellees' application supports the counts and

that initiation of any efforts to remedy the mistreatment of the reissue oath question should be done in the Patent Office. Thus I concur in the affirmance of the decision of the board.

LANE, Judge (dissenting).

I conclude that the decision of the Board of Patent Interferences awarding priority to appellees should be reversed and that the case should be remanded to the Patent Office for a determination of the entitlement of appellees to a reissue patent under the provisions of 35 U.S.C. § 251. I agree with the conclusions of the majority concerning appellees' support for the counts, and I agree that the interests of justice are served by presently reviewing and supporting the board's holding on that question. However, I do not believe that the *decision* of the board in the form of an *award of priority* can be affirmed where priority has been awarded before a complete determination of all issues timely and properly raised. See Vandenberg v. Reynolds, 44 CCPA 873, 879, 242 F.2d 761, 765, 113 USPQ 275, 278 (1957). Leaving the further course of action to the Patent Office in the manner indicated in the majority opinion seems to me to be unsatisfactory since appellants, faced with a judgment of priority against them, will have no means of compelling examination of the reissue question. That is an inappropriate procedural posture in which to put the appellants, and one which could be readily avoided by reversing and remanding.

Since appellants have not contested the board's holding to the effect that the reissue oath question is not ancillary to priority and therefore not within its jurisdiction, I would agree that this is not an appropriate case for us to review that jurisdictional question. I do feel, however, that reflective current thinking in this area is needed. I am not convinced that there is sound underlying basis for precluding review by the board and this court of a decision respecting the sufficiency of a reissue oath, although there is admittedly a long prece-

dential history of that proposition, the most recent expression of which appears in Pritchard v. Loughlin, 53 CCPA 1339, 360 F.2d 250, 149 USPQ 676 (1966). The court in that case saw no reason to depart from the established rule.

The rationale of the cases holding reissue challenges not to be ancillary to priority is that they are not in actuality matters of patentability suitable for ex parte consideration and unrelated to the interference proceeding. Patentability in general has long been held not to be ancillary to priority. See Glass v. De-Roo, 44 CCPA 723, 239 F.2d 402, 112 USPQ 62 (1956). Accepting this principle, it is nevertheless noted that in Norton v. Curtiss, 57 CCPA 1384, 1389, 433 F.2d 779, 783, 167 USPQ 532, 535–36 (1970), decided subsequent to *Pritchard,* this court held fraud to be a matter ancillary to priority. The theory expressed in *Norton* is that if fraud were proved, the party that committed it would lose its right to have the interfering claims present in its application and would therefore lose its standing as a party to the interference. We reaffirmed the *Norton* holding in Langer v. Kaufman, 59 CCPA ——, ——, 465 F.2d 915, 920–21, 175 USPQ 172, 175–76 (1972), observing a distinction between fraud and other grounds of unpatentability. It is clear, however, that fraud on the part of a party to an interference falls within the broad scope of patentability.

From a jurisdictional standpoint, inability to present interfering claims because of an insufficient reissue oath appears indistinguishable from inability to present claims because of fraud. In each situation, the charges, if true, render one of the parties incapable of *presenting* interfering claims from which it follows that the party is not a proper party to the proceeding.

Whereas analysis of a specific contention under the jurisdictional standard of ancillarity in the past has focused on the relationship of the contention to a contention of unpatentability, I suggest

that in the future the focus might as logically be the relationship of the contention to a contention of fraud. Most importantly, there does appear to be a need to reexamine the jurisdictional questions present in an interference in light of the potential changes flowing from *Norton* and *Langer*.

As for the present case, I would reverse the board's decision and remand the case to the Patent Office for consideration of the reissue question by the appropriate official or tribunal.